The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Shuping. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
Prior to the hearing before the Deputy Commissioner the parties entered into a Pre-trial Agreement, wherein they agreed to a number of jurisdictional and other factual stipulations, including as part thereof the index of stipulated medical records attached thereto.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is an unemployed, married female in her late 50's with a GED or so-called high school equivalency certificate whose husband is also disabled. She is not only continuing to receive weekly workers' compensation benefits since again becoming totally disabled by the involved back injury on March 10, 1992, but is receiving social security disability benefits, which, along with her husband's disability, contribute to her not being currently highly motivated to return to work were she able. Her other prior work experience has included working as a nursing aide at Crowell Hospital, a winder operator at Hudson Hosiery, a spinner frame operator at Long Cotton Mill, assistant manager at Variety Department Store, ladder back and seat cushion weaver at defendant-employer and cutter at Burris Furniture and Bradington Young Furniture. When injured she was employed in the same capacity by defendant Cochran Furniture requiring her to lift heavy rolls of cloth for cutting and can no longer return to this type of work because of the permanent back injury sustained.
2. Although prior to the May 2, 1991 date in question she had not only developed degenerative disc disease in her lumbosacral spine and associated spinal stenosis at the L4-5 level thereof resulting in her experiencing chronic low back pain for which she had intermittently taken medication, but following a motor vehicle accident some ten years earlier had developed cervical spondylosis resulting in her experiencing chronic neck and left arm pain; plaintiff had been able to continue regularly working despite her chronic low back and neck problems and had been able to do the heavy lifting required by her cutter's job.
3. In the process of lifting an 80 pound roll of cloth for cutting on May 2, 1991 plaintiff sustained the admittedly compensable back injury giving rise hereto, which not only resulted in a left-sided disc herniation at the T8-9 level of her thoracic spine manifested by thoracic back pain radiating around to the rib cage area and ultimately requiring corrective surgery, but (the same injury) materially aggravated her existing, but then non-incapacitating, chronic neck and low back problems described in Finding of Fact Number Two hereinabove thereby proximately contributing to her ultimate disability.
4. Although she had neither then reached maximum medical improvement and/or the end of the healing period from and following the involved back injury nor was she able to return to her regular cutter's job; with the conservative treatment received, which primarily consisted of medication, restricted activity and physical therapy, including as part thereof referral to the Work Recovery Center to participate in a work hardening program, by January 22, 1993 plaintiff was able to return to alternate light work as a glue blocker in the case plant responsible for gluing blocks in the drawers of furniture manufactured there, which did not require any lifting and defendant-employer eliminated the bending otherwise required to obtain the needed blocks by having another employee do it for her.
5. Unfortunately the glue blocking job was a temporary one dependent upon the case plant manufacturing furniture with drawers requiring glue blocking as opposed to with doors requiring sanding and on this occasion the job was only available for one day before the case plant began manufacturing furniture with doors requiring sanding. Plaintiff was then responsible for using a vibrating hand sander to sand the same drawers, which aggravated the involved back injury resulting in her again becoming totally disabled thereby on January 30, 1992, contemporaneous with which she again began receiving recurrent temporary-total disability benefits under the Industrial Commission's March 5, 1992 Award.
6. Thereafter during the second week of February, 1992 plaintiff attempted to return to another light work job in the upholstery department turning out seat cushions requiring her to lift baskets of the same cushions weighing in the 20 pound range or more again aggravating her back injury and resulting in her again becoming totally disabled thereby on March 10, 1992, contemporaneous with which she again began receiving recurrent temporary-total disability benefits under the Industrial Commission's last July 23, 1992 Award herein and not only continues to receive them to date, but her disability otherwise presumptively continues until she returns to work, which plaintiff has not yet.
The only other light duty work that defendant-employer had available was a job wiping down furniture in the finishing department, which plaintiff could not do because she was allergic to the chemicals used there.
7. Since plaintiff was forced to stop work on March 10, 1992 by her back injury defendant-employer has not attempted to offer her any further light work because of having already offered the lightest work it had available, which she was unable to do.
8. Although in the interim being evaluated at defendant-carriers request by Dr. Craig D. Brigham, a Charlotte orthopedic surgeon, who had no further treatment to offer and released her to return to unrestricted work, plaintiff on her own went to the Charlotte neurosurgeon, Dr. Nick E. Grivas, that had previously treated her husband. Because of suspecting that plaintiff had sustained a ruptured thoracic disc manifested by the thoracic pain that she experienced radiating into her rib cage area, Dr. Grivas obtained a diagnostic MRI, myelogram and post-myelogram CT scan indicating abnormalities in her thoracic spine requiring corrective surgery. As plaintiff sought the Industrial Commission's approval prior to undergoing the corrective surgery that Dr. Grivas ultimately performed on August 26, 1992 for the left-sided disc rupture that she sustained at the T8-9 level of her thoracic spine as a result of the May 2, 1991 back injury giving rise hereto and the same surgery was not only reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated with her disabling back condition, but did so reducing the excruciating pain that she was experiencing in her rib cage area; defendant-employer is obligated to provide the recommended surgery.
9. Although the involved back surgery did reduce her excruciating rib cage pain; plaintiff continues to experience incapacitating neck and back pain and her symptoms worsen whenever she becomes active such as in an attempting to perform housework requiring her to sit or lay down as many as four or five times a day from a half an hour up to as much as an hour.
10. Because she was continuing to experience incapacitating pain when he last saw her on November 17, 1993 Dr. Grivas recommended that plaintiff undergo a functional capacity evaluation by a psychiatrist to determine her actual physical limitations from the permanent back injury sustained on May 2, 1991 resulting in a fifteen (15) percent permanent partial disability of the back.
11. Pursuant to Dr. Grivas's referral, on February 28, 1994 plaintiff was seen for evaluation for rehabilitation at the Mercy Center for Outpatient Rehabilitation by the premises medical director, Dr. Neal S. Taub, a specialist in physical medicine and rehabilitation, who, after an interim trial of pool therapy and home exercise, had her undergo a two day functional capacity evaluation in June of that year. Although the same functional capacity evaluation not only indicated plaintiff was limited to sedentary work requiring occasional lifting up to 10 pounds and occasional standing and walking, but her resulting low level of function from the permanent back injury involved then prevented her from returning to work; Dr. Taub recommended enrollment in a multi-disciplinary pain program at the Rehab Center because there were significant inconsistencies in the functional capacity evaluation. Unlike the work hardening program that she had previously undergone, which is more concerned with the physical aspects of an injury, the pain program recommended places greater emphasis on behavior management and encouragement of the type of appropriate work behaviors plaintiff will require because she is not highly motivated to return to work. The program itself involves a more aggressive rehabilitation program consisting of multiple disciplines and including, but not limited to, physical therapy, exercise, physiology, pool treatment, psychotherapy, group therapy and biofeedback and is designed to not only attempt to improve the patient's level of function such as from sedentary to light work enabling them to be more competitive for employment as well as to attempt to modify the type of pain behavior plaintiff has shown, but she will remain under constant supervision and observation enabling her true level of function to be more clearly established.
Although there is a zero likelihood that the involved program will totally cure her chronic pain and the likelihood that she will be able to return to work is not high because of the three years that have elapsed since her injury and her lack of motivation to return to work, contributing to which are the fact that she continues to receive weekly workers' compensation benefits, also receives social security disability benefits and has a disabled husband; the program is not only designed to increase plaintiff's level of function and there is a possibility it can do so, but is a more objective way of determining what her actual capacity is and in particularly whether she is volitionally withholding effort. Thus under the above-described circumstances the recommended pain clinic program is reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated with plaintiff's chronic incapacitating pain from her May 2, 1991 back injury and as a result defendant-employer is obligated to bear the expense of the same program.
12. Finally there is no evidence that sedentary work is currently available for someone of plaintiff's age, education, background and work experience having the physical limitations she does from her permanent back injury and resulting incapacitating pain — much less that she can obtain it.
13. Absent a showing that the Industrial Commission's original award was entered in error due to fraud, misrepresentation, undue influence or mutual mistake (of fact), the parties are bound by the provisions of the same award, including the average weekly wage shown thereon, which was not subject to wage verification. There was further absolutely no evidence offered at hearing that the same agreement was entered in error due to fraud, misrepresentation, undue influence or mutual mistake (of fact), and, in particularly, that the average weekly wage shown thereon was not accurate. Plaintiff offered no testimony or other evidence that it was not. She did not dispute signing the agreement upon which the original award was based. In fact there was no testimony or other evidence from either side about plaintiff's average weekly wage — much less that the $369.20 shown on the Industrial Commission's original award was not accurate; but rather, in the Pre-trial Agreement plaintiff's counsel contended that the average weekly wage shown on the original award should be changed in accordance with the Wage Chart, which he requested defendant-employer be obligated to be ordered to provide; however, in the undersigned's opinion this amounts to nothing more than a fishing expedition and is no substitute for the evidence that plaintiff's counsel could and should have produced at hearing that not only the average weekly wage shown on the agreement was inaccurate, but the agreement was entered in error due to either fraud, misrepresentation, undue influence or mutual mistake (of fact), which has neither been proven — much less alleged.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. As a result of the permanent back injury she sustained on May 2, 1991 plaintiff has remained totally disabled since March 10, 1992 entitling her to compensation at a rate of $246.14 per week from March 10, 1992 to the scheduled hearing date and thereafter continuing at the same rate so long as she remains disabled, subject to a credit for the weekly compensation benefits that defendant-carrier has paid since March 10, 1992 pursuant to the Industrial Commission's last award. G.S. § 97-29.
2. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendants are obligated to pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the May 2, 1991 back injury giving rise hereto, including as part thereof not only the corrective back surgery performed by Dr. Grivas, but enrollment in the multi-disciplinary pain program recommended by Dr. Taub, when bills for the same are submitted on proper forms, through defendant-carrier, to the Industrial Commission for approval and are approved by the Commission. G.S. § 97-25.
It has not been shown that the Industrial Commission's original award was entered in error due to fraud, misrepresentation, undue influence or mutual mistake (of fact) pursuant to the provisions of G.S. § 97-17; therefore, the parties are bound by the provisions of the same award, including as part thereof, plaintiff's average weekly wage. G.S. § 97-17; Roberts vs.Carolina Tables of Hickory, 76 N.C. App. 148, 331 S.E.2d 757
(1985).
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay plaintiff, on account of her continuing total disability, compensation at a rate of $246.14 per week from March 10, 1992 to the scheduled hearing date and thereafter continuing at the same rate so long as she remains totally disabled, subject to a credit for the weekly compensation benefits that defendant-employer has paid under the Industrial Commission's Awards since March 10, 1992 and a reasonable attorney fee for plaintiff's counsel.
2. As a reasonable attorney fee for plaintiff's counsel, defendant-carrier shall forward every fourth compensation check payable hereunder directly to plaintiff's counsel for his fee.
3. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendants shall pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the injury by accident giving rise hereto, including as part thereof the corrective surgery performed by Dr. Grivas and the enrollment in the multi-disciplinary pain program recommended by Dr. Taub, when bills for the same are submitted on proper forms, through defendant-carrier, to the Industrial Commission for approval and are approved by the Commission.
4. Defendants shall bear the costs, including as part thereof the following expert witness fees previously awarded the involved physicians for their testimony to the extent the same have not already been paid: $225.00 to Dr. Taub, $250.00 apiece to Dr. Sims and Grivas, $325.00 to Dr. Stutesman and $350.00 to Dr. Brigham.
 S/ ______________________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ ______________________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ______________________________ J. RANDOLPH WARD COMMISSIONER
CMV/CNP/tmd 3/30/95